FILED
2018 Feb-09 AM 11:22
U.S. DISTRICT COURT
N.D. OF ALABAMA

# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF ALABAMA
# MIDDLE DIVISION

| | |
|---|---|
| DOVIE RENEE OWENS, | ) |
| Plaintiff, | ) ) ) |
| v. | ) Case No. 4:16-cv-01416-JEO ) |
| NANCY BERRYHILL, Acting Commissioner of Social Security, | ) ) ) |
| Defendant. | ) |

## MEMORANDUM OPINION

Plaintiff Dovie Renee Owens brings this action pursuant to 42 U.S.C. § 405(g), seeking review of the final decision of the Acting Commissioner of Social Security ("Commissioner") denying her application for supplemental security income ("SSI"). (Doc. 1).[1] The case has been assigned to the undersigned United States Magistrate Judge pursuant to this court's general order of reference. The parties have consented to the jurisdiction of this court for disposition of the matter. (*See* Doc. 8). *See* 28 U.S.C. § 636(c), FED. R. CIV. P. 73(a). Upon review of the record and the relevant law, the undersigned finds that the Commissioner's decision is due to be affirmed.

---

[1] References herein to "Doc(s). __" are to the document numbers assigned by the Clerk of the Court to the pleadings, motions, and other materials in the court file, as reflected on the docket sheet in the court's Case Management/Electronic Case Files (CM/ECF) system.

## I. PROCEDURAL HISTORY

Plaintiff filed her current SSI application in April 2013, alleging she became disabled beginning January 31, 2011. It was initially denied. An administrative law judge ("ALJ") held a hearing on January 9, 2015 (R. 37) and issued an unfavorable decision on April 10, 2015 (R. 7-14). The Appeals Council ("AC") denied Plaintiff's request for review. (R. 1-6).

## II. FACTS

Plaintiff was 46 years old at the time of the ALJ's decision. (R. 25). Plaintiff alleged onset of disability due to physical impairments of diabetes mellitus with peripheral neuropathy, rheumatoid arthritis, chronic bronchitis, chronic obstructive pulmonary disease ("COPD"), and obesity, and mental impairments of depression and panic disorder. (*Id*.)

Following a hearing, applying the five-step sequential evaluation process, the ALJ found that Plaintiff had the just-mentioned severe impairments. (R. 20). He noted that Plaintiff also alleged fibromyalgia and hyperlipidemia impairments, but determined that those conditions were not severe. (*Id*.) The ALJ also found Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 C.F.R. pt. 404, subpt. P, app. 1. (R. 21). He further found Plaintiff retained the residual

functional capacity ("RFC") to perform a reduced range of light work, with various postural limitations and no exposure to hazards. (R. 15). The ALJ then found that Plaintiff was limited to work that requires no more than understanding, remembering, and carrying out simple instructions; she can sustain such activity for two hours with normal breaks over an eight-hour workday; she is capable of occasional decision making and interaction with the public, coworkers, and supervisors, but can have no more than infrequent changes in the work setting; instructions or tasks of the job cannot be conveyed in a written format and can only be conveyed or demonstrated orally. (R. 25). Lastly, the ALJ found Plaintiff is likely to miss two or fewer days per month from work. (*Id*.)

The ALJ found that Plaintiff could perform work that exists in significant numbers in the national economy, considering Plaintiff's age, education, work experience, and RFC. (R. 31-32, 74-75). He then concluded that Plaintiff was not disabled. (R. 33).

### III. STANDARD OF REVIEW

The court's review of the Commissioner's decision is narrowly circumscribed. The function of the court is to determine whether the Commissioner's decision is supported by substantial evidence and whether proper legal standards were applied. *Richardson v. Perales*, 402 U.S. 389, 390, 91 S. Ct.

1420, 1422 (1971); *Mitchell v. Comm'r Soc. Sec.*, 771 F.3d 780, 782 (11th Cir. 2015; *Wilson v. Barnhart*, 284 F.3d 1219, 1221 (11th Cir. 2002). The court must "scrutinize the record as a whole to determine if the decision reached is reasonable and supported by substantial evidence." *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983). Substantial evidence is "such relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Id.* It is "more than a scintilla, but less than a preponderance." *Id.*

The court must uphold factual findings that are supported by substantial evidence. However, it reviews the ALJ's legal conclusions *de novo* because no presumption of validity attaches to the ALJ's determination of the proper legal standards to be applied. *Davis v. Shalala*, 985 F.2d 528, 531 (11th Cir. 1993). If the court finds an error in the ALJ's application of the law, or if the ALJ fails to provide the court with sufficient reasoning for determining that the proper legal analysis has been conducted, it must reverse the ALJ's decision. *See Cornelius v. Sullivan*, 936 F.2d 1143, 1145-46 (11th Cir. 1991). The court must affirm the ALJ's decision if substantial evidence supports it, even if other evidence preponderates against the Commissioner's findings. *See Crawford v. Comm'r of Soc. Sec.*, 363 F.3d 1155, 1158 (11th Cir. 2004) (quoting *Martin v. Sullivan*, 894 F.2d 1520, 1529 (11th Cir.1990)).

# IV. STATUTORY AND REGULATORY FRAMEWORK

To qualify for benefits a claimant must show the inability to engage in "any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 1382c(a)(3)(A). A physical or mental impairment is "an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. § 1382c(a)(3)(D).

Determination of disability under the Social Security Act requires a five step analysis. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). Specifically, the Commissioner must determine in sequence:

> whether the claimant: (1) is unable to engage in substantial gainful activity; (2) has a severe medically determinable physical or mental impairment; (3) has such an impairment that meets or equals a Listing and meets the duration requirements; (4) can perform his past relevant work, in light of his residual functional capacity; and (5) can make an adjustment to other work, in light of his residual functional capacity, age, education, and work experience.

*Evans v. Comm'r of Soc. Sec.*, 551 F. App'x 521, 524 (11th Cir. 2014)[2] (citing 20

---

[2] Unpublished opinions of the Eleventh Circuit Court of Appeals are not considered binding precedent; however, they may be cited as persuasive authority. 11th Cir. R. 36-2.

C.F.R. § 404.1520(a)(4)); 20 C.F.R. § 416.920(a)(4). The plaintiff bears the burden of proving that she was disabled within the meaning of the Social Security Act. *Moore v. Barnhart*, 405 F.3d 1208, 1211 (11th Cir. 2005). The applicable regulations "place a very heavy burden on the claimant to demonstrate both a qualifying disability and an inability to perform past relevant work." *Id*.

## V. DISCUSSION

Plaintiff argues the ALJ "did not fully consider the combination of [her] impairments before determining her residual function capacity [("RFC")]." (Doc. 12 at 12). She next argues that the ALJ's "finding that [she] is likely to miss work two or fewer days per month is not supported by substantial evidence." (*Id*. at 12-13). Plaintiff requests that his court reverse and remand this case for reconsideration of her "physical impairments and pain complaints in combination." (*Id*. at 13).

Plaintiff was diagnosed with type II diabetes mellitus in 2007. (R. 26). She has been steroid dependent for her rheumatoid arthritis since at least 2008. (*Id*.) She was diagnosed with COPD in February 2009 when an x-ray of her chest showed her lungs to be hyperexpanded from COPD with prominence of retrosternal space. (*Id*.) She also experiences infrequent episodes of chronic bronchitis. (*Id*.) The ALJ summarized her hearing testimony as follows:

The claimant testified that she last worked as a security guard in 2011, but had to stop due to her impairments. She testified that she has had diabetes mellitus for eight years, and takes five shots of insulin per day. She stated that her medications help her manage her blood sugar levels, but they take a long time to lower her blood sugars. The claimant stated that her blood sugars fluctuate a lot due to her diet. She has been placed on a restrictive diet, and drinks diet coke, eats wheat bread, only eats one egg a day, and has overall reduced her portions. She testified that when her blood sugars are high, she feels exhausted, gets light headed and dizzy, and has to lie down. Her blood sugars normally range over 300, but have been as high as 600 or 700, such as after thanksgiving.

The claimant testified that her diabetes mellitus also causes neuropathic pain in his [sic] feet. She alleged that her feet swell and she has to wear flip-flops. She also alleged that the neuropathy causes pain in her feet when she walks, and she has pain in her legs and feet at night that disturb her sleep. On questioning by her representative, she testified that her pain is a 10 out of 10, where 10 requires taking strong medication, most of the time.

At the hearing, the claimant demonstrated her rheumatoid arthritis nodules on her wrist, elbows, and feet. She testified that she can only sit for about 20 to 25 minutes before she has to get up and walk around due to the pain in her feet, and her bad circulation. She related that she had to stop every 20 miles on the way to the hearing to stand up and walk[ ] around for five or ten minutes due to the pain in her knees. Relatedly, she stated that she only drives two days a week to the Dollar Store, which is about a block away from her house, because her feet go numb.

As discussed above, the claimant testified that she has difficulty with her wrists and lifting or carry[ing] weight. She stated that she cannot open envelopes, and reported that she does not wear clothes that have buttons.... She also reported that her children braid her hair because of the arthritis in her hands.... The claimant reported that the most she can lift is a pot of coffee. She testified that she cooks once a week, when her daughter does not feel like cooking. She alleged that

she can only stand for about 15 to 20 minutes, and can only walk for a couple hundred feet. She related that her COPD causes her to be winded after walking only short distances, such as walking to the mailbox or down the hall to the bathroom. She testified that she experiences shortness of breath three to four times a day, and uses a breathing machine as needed. Although she still smokes, she stated that she has transitioned to electronic cigarettes.

The claimant alleged that she has had depression for 22 years. She stated that she has memory problems and forgets to do things, like remind her husband to mail letters. However, she stated that she likes to play cards, and read her granddaughter books. The claimant has also alleged experiencing panic attacks [that] prevent her from leaving her house. She testified that she does have frequent contact with her family, and that her friends visit her in her home regularly.

(R. 25-26 (citations omitted)).

The medical records show that Plaintiff has suffered with diabetes mellitus since around 2007.[3] (R. 244). Her hemoglobin A1c and glucose tests[4] were oftentimes very high. (R. 333, 340, 345, 347). Plaintiff's medical records reflect that she was "in poor control" of her blood sugars in November 2012. (R. 323). Her hemoglobin A1c was still high as of January 2013. (R. 320). She complained of pain in her feet when walking. (R. 319). In December 2013, her blood sugar was very high at 525. (R. 314). She reported eating candy and drinking coke and

---

[3]Much of Plaintiff's treatment was rendered at the DeKalb Interfaith Clinic. However, as noted by the ALJ, many of the treatment notes are illegible. (R. 26).

[4]The hemoglobin A1c test informs the patient of his or her average level of blood sugar over the past two to three months. https://www.webmd.com/diabetes/guide/glycated-hemoglobin-test-hba1c (last visited February 6, 2018).

sweet tea. (*Id*.)

Plaintiff has been steroid dependent for her rheumatoid arthritis since at least 2008. (R. 238). She had knee and leg pain in January 2012 after she experienced a ten pound weight gain. (R. 332). In March 2012, she complained of swelling and numbness in her feet and pain when walking. (R. 333). Her rheumatoid factor was high at 1:128. (*Id*.) In June 2012, she complained of joint pain and rheumatoid nodules in her hips. (R. 330). She was taking Tylenol for the pain. (*Id*.)

Plaintiff was diagnosed with COPD in February 2009. She also experiences intermittent chronic bronchitis. Her most recent episode was July 2014, when she reported to the DeKalb Regional Medical Center ER with complaints of shortness of breadth and coughing. (R. 361). Her chest x-rays showed her lungs were fully expanded and essentially clear. (R. 365). She was diagnosed with COPD with exacerbation due to pneumonia and pulmonary edema. (R.362). She was discharged with a prescription for prednisone. (R. 363).

Plaintiff was diagnosed in May 2009 with cylclothymia, anxiety, and depression due to complaints relating to situational stresses and family problems. (R. 230). She was prescribed Lexapro. (*Id*.) In March 2013, she was seen for depression. She was prescribed Prozac. (R. 318). She reported that her

9

depression was better in April 2013. (R. 317). She was continued on Prozac. (*Id*.) In May 2013, she again reported that her depression was better. (R. 316). Her Prozac was increased from 20mg a day to 40mg a day in October 2013. (R. 315).

Plaintiff underwent a consultative psychiatric evaluation with Dr. June Nichols in May 2013. Dr. Nichols found Plaintiff's cognitive abilities to be grossly intact, but somewhat limited. (R. 298). She diagnosed Plaintiff as experiencing major depressive, recurrent, moderate panic disorder with agoraphobia. (R. 300). She also assigned the claimant a Global Assessment of Functioning score of 45, indicating serious symptoms or moderate difficulty in social and occupational functioning. (R. 301). In the "Prognosis" section of her report, she stated, in pertinent part:

> .... Ms. Owens suffers from multiple physical problems as well as major depression that has been present for many years and a panic disorder that has gotten so severe that she no longer leaves home unless there is an appointment or "a good reason". Her ability to relate interpersonally and withstand the pressures of everyday work is compromised due to the nature of her current symptomatology. She does have deficits, which would interfere with her ability to remember, understand and carry out work related instructions. The level of anxiety is interfering significantly with concentration. She is able handle her own funds and live independently with some assistance. It is questionable as to whether or not there could be significant improvement expected over the next 12 months as she has no resources, no treatment available and no insurance.

(*Id.*)

Plaintiff also underwent a consultative internal medicine examination in May 2013 with Dr. Alvin Tenchavez. (R. 304). During a neuromuscular examination, Dr. Tenchavez observed that Plaintiff was able to "heel, toe, tandem walk, and stoop and rise on her knees"; she had no sensory defects on general review; her straight leg raising was negative bilaterally in the sitting and supine positions; she had 5/5 grip strength in all muscle groups, and showed no signs of edema, dermatitis, ulcerations, or varicosities; she had the ability to make fists, oppose her thumbs to her fingers, tie her shoelaces, pick up small objects, button, hold a glass, and turn a doorknob; and she was able to ambulate without any assistive device. (R. 306). During a musculoskeletal examination, he noted crepitation in Plaintiff's knees bilaterally and rheumatoid nodules in her left forearm and knees and on the dorsum of both her feet, and that she had no pain, restrictions, or swelling on review of her other joints. (*Id.*) He diagnosed Plaintiff's conditions to include type II diabetes mellitus, hyperlipidemia, depression, peripheral neuropathy, rheumatoid arthritis, and COPD. (*Id.*)

Plaintiff argues, as noted above, that the ALJ did not fully consider the combination of her impairments before determining her RFC or the amount of work she would be able to endure. (Doc. 12 at 12). Specifically, she argues the

11

ALJ merely considered her impairments singularly and made only conclusory reference to her combined impairments. (*Id.*) She also argues that her various conditions in combination cause extreme discomfort and fatigue. (*Id.*) The Commissioner responds that the ALJ adequately considered the entire record in making his determination. (Doc. 14 at 7). The court agrees with the Commissioner.

At the outset, when considering whether Plaintiff had a severe impairment or combination of impairments, the ALJ noted that Plaintiff's "impairments have combined to more than minimally restrict [her] physical and mental abilities to do basis work activities, and have lasted longer than twelve months." (R. 20). When considering whether Plaintiff's impairment or combination of impairments met or exceeded a listing, the ALJ stated that Plaintiff did not have an impairment "or combination of impairments" that met or medically equaled a listing. (R. 21). By way of example, in considering Plaintiff's obesity, the ALJ stated that "the medical evidence of record shows that [her] obesity, by itself, or in combination with other impairments, does not meet or equal the criteria of a listing." (R. 22). While the ALJ did not provide a similar analysis for every impairment, he did state that he considered "all symptoms" in his RFC analysis. (R. 25). Additionally, he discussed the cumulative effect of Plaintiff's impairments throughout his decision.

(*See, e.g.,* R. 21 (obesity "has some negative impact on [Plaintiff's] physical functioning"), R. 24 (mental function analysis is considered in the RFC analysis), and R. 29 (Plaintiff's "weight exacerbates her rheumatoid arthritis and diabetes mellitus with peripheral neuropathy")). Thus, the court finds that the ALJ did consider the combined effect of Plaintiff's impairments. *See Scott v. Colvin*, 652 F. App'x 778, 781 (11th Cir. 2016) (finding ALJ's statement that the claimant's combined impairments did not amount to a listed impairment and specific, articulated findings as to the effect of the combination of the claimant's impairments constituted evidence that the ALJ considered the combined effects of the claimant's impairments and discussed their cumulative effect); *Smith v. Berryhill*, 2017 WL 6367890, *4 (N.D. Ala. Dec. 13, 2017) (ALJ's statement that he "'considered all symptoms and the extent to which these symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence' in determining that they did not amount to a listed impairment, and discussed the cumulative impact of Smith's impairments throughout his decision... establishes that the ALJ considered all of Smith's impairments and the combined effects of her impairments in reaching his decision"). Accordingly, this claim is without merit.

Plaintiff also seems to challenge the overall sufficiency of the evidence. In

13

support of her argument, Plaintiff cites to the following evidence:

> [Plaintiff] takes five insulin shots a day for her uncontrolled diabetes mellitus. (Tr. 49-50). Because of diabetic neuropathy her feet swell and stay in pain. She cannot even wear regular shoes or socks. (Tr. 52). She has knots on her feet from her rheumatoid arthritis. (Tr. 53-54). Her knuckles are swollen. (Tr. 54). She becomes short of breath after very little walking. (Tr. 55-56). The numbness in her feet makes it unsafe for her to drive. (Tr. 57-59). [Plaintiff's] knee and leg pain started in January 2012. (Exhibit 6F/23). Since then her rheumatoid factor has increased to 1:128. (Exhibit 6F/22). (Tr. 27).

(Doc 12 at 13). The Commissioner argues that the ALJ correctly evaluated Plaintiff's RFC and that substantial evidence supports his finding. (Doc. 14 at 11). Again, the court agrees with the Commissioner.

After a detailed analysis of Plaintiff's medical conditions, the ALJ found that she could perform a reduced range of light work and would miss two or fewer days of work per month. (R. 24-31). While Plaintiff suffers from various serious maladies, the court finds that the record supports the ALJ's determinations for a number of reasons. First, Plaintiff's daily activities, at least in part, are greater than one would expect given her complaints of disabling symptoms and limitations. In reaching this conclusion, the court is well aware that participation in everyday activities of short duration, such as housework, do not disqualify a claimant. *See Lewis v. Callahan*, 125 F.3d 1436, 1441 (11th Cir. 1997). But this case is different. Plaintiff is able to take care of her eighteen-year-old autistic son;

14

she goes grocery shopping twice a month, for two and a half hours at a time; and she goes to Walmart and the dollar store. This is more than simple household chores. These activities were properly considered and support the ALJ's decision.

Second, as noted by the ALJ, Plaintiff has not received the type of treatment one would expect given her complaints. For example, while Plaintiff has taken Prozac, she has never had any counseling despite the fact that she has been referred for mental health treatment. (R. 318). Additionally, although Plaintiff claims to experience constant pain at a level of 10 on a 10-point scale (*see* R. 68), she has not been prescribed any pain medication other than Tylenol or Motrin (*see, e.g.,* R. 318).

Third, Plaintiff has not been compliant with medical advice. She continued to consume items that were inimical to her diabetic condition. These items, including cokes, sweet tea, and candy, were consumed despite her already elevated blood sugar levels. Additionally, Plaintiff's medical records as recent as July 24, 2014, show that she was continuing to smoke cigarettes[5] despite her diagnosis of COPD and chronic intermittent bronchitis. (R. 361). The ALJ properly considered this evidence in determining the seriousness of Plaintiff's impairments.

---

[5]The court recognizes that Plaintiff testified that she had transitioned to electronic cigarettes by the time of the hearing. (R. 26).

15

*See Ellison v. Barnhart*, 355 F.3d 1272, 1275 (11th Cir. 2003) (finding the ALJ's consideration of a plaintiff' noncompliance was a factor in discrediting allegations of disability).

Fourth, other evidence in the record supports the decision of the ALJ. Dr. Tenchavez's May 2013 consultative examination of Plaintiff was largely unremarkable. He noted her prior diagnoses. He found no sensory defects or edema. He noted some expiratory wheezing, crepitation in Plaintiff's knees bilaterally, and rheumatoid nodules in her left forearm and knees and on the dorsum of both feet. (R. 304-06). State agency consultant Dr. Amy Cooper opined Plaintiff could carry out simple tasks and would miss only one to two days of work a month due to her mental condition.[6] (R. 29-31, 80-91).

---

[6]The court recognizes that consultative examiner Dr. June Nichols opined that Plaintiff suffers from "multiple physical problems as well as major depression that has been present for many years and a panic disorder that has gotten so severe that she no longer leaves home unless there is an appointment or 'a good reason'"; that Plaintiff's "ability to relate interpersonally and withstand the pressures of everyday work is compromised due to the nature of her current symptomatology"; that her deficits "would interfere with her ability to remember, understand, and carry out work related instructions" and that her "level of anxiety is interfering significantly with concentration"; and that she "is able to handle her own funds and live independently with some assistance." (R. 301). However, the ALJ only gave Dr. Nichols's opinion "some weight" because it is inconsistent with Plaintiff's treatment history. (R. 30) Specifically, he stated that her

> treatment history shows that she has only been prescribed medications for anxiety and depression beginning in 2011. The treatment notes also show that [Plaintiff] reported her depression to be better after being on medication in April and May 2013.... Although her prescription for Prozac was increased in October 2013, there is no indication that [she] ever followed up on her doctor's referral for further mental health treatment.... Additionally, although [Plaintiff] complained of panic

16

To the extent Plaintiff cites her GAF score in support of her position, the court, again, is not impressed. Her GAF score of 45[7] is of limited value. "The Commissioner [has] ... declined to endorse the GAF scale for use in the Social Security and SSI disability programs, and ... [has] indicated that GAF scores have no direct correlation to the severity requirements of the mental disorders listings." *Wind v. Barnhart*, 133 F. App'x 684, 692 n.5 (11th Cir. 2005) (internal quotations omitted) (citing 60 Fed. Reg. 50746, 50764–65 (Aug. 21, 2000)). While a GAF score distills an individual's symptoms and functioning to a single number, an ALJ assessing a claimant's RFC must consider the claimant's "'functional limitations or restrictions and assess ... her work-related abilities on a function by function basis.'" *Freeman v. Barnhart*, 220 F. App'x 957, 959 (11th Cir. 2007) (quoting Social Security Ruling 96-8p, 1996 WL 374184). The court also notes that the latest edition of the Manual of Mental Disorders has abandoned the GAF scale because of "its conceptual lack of clarity ... and questionable psychometrics in routine practice." Diagnostic and Statistical Manual of Mental Disorders 16

---

attacks to Dr. Nichols in May 2013, there is no mention of [her] suffering panic attacks in her treatment notes prior to that date....

(*Id*. (citations omitted)). Plaintiff does not challenge the accuracy of these determinations.

[7]A GAF score of 45 indicates "serious symptoms or moderate difficulty in social and occupational functioning." (R. 28 (citing R. 301 and DSM-IV-TR, p. 34)).

(5th ed. 2013). This evidence was considered by the ALJ and no argument has been presented to alter his decision.[8]

## VI. CONCLUSION

For the reasons set forth above, the undersigned concludes that the case is due to be affirmed. An appropriate order will be entered separately.

**DONE,** this the 9th day of February, 2018.

                                            _John E. Ott_
                                            **JOHN E. OTT**
                                            Chief United States Magistrate Judge

---

[8]The ALJ stated as follows:

> The undersigned also gives little weight to the GAF score of 45 assigned to the claimant by Dr. Nichols.... A GAF score represents the subjective opinion of one clinician, on one day, at a single point in time. It was not intended for adjudicative purposes or for use in litigation because the score may vary from day to day, time to time, and from one evaluator to another. The raw numerical score should be supported by a narrative detailing the rationale for the findings of the evaluator. Without that narrative, unless supported by other medical evidence, a GAF score standing alone is not considered to accurately reflect psychological constraints on an individual's ability to work. The undersigned gives little weight to this GAF score because it was not supported by a narrative detailing the rationale for the findings of the evaluator. Additionally, this low GAF score is inconsistent with the claimant's treatment records. Therefore, the undersigned gives this GAF score less weight than the other opinions of record.

(R. 30 (citation omitted)).